UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LAMAR ELLIS, LEROY FORTADO, SR., | * | CIVIL ACTION NO: |
| KATHRINE FOSTER, ERVIN JACK, JR., | * | |
| JOYCE JOHNSON, GENEIVA JONES, | * | JUDGE: |
| ROSYLYN JOSEPH, JOAN LEBEOUF, | * | |
| LORITTA LUMAR, MARGIE MOORE, | * | MAGISTRATE JUDGE: |
| RAMONA SIMONEAUX, ALESHIA | * | |
| SYLVAIN, AUGUST TASSIN, JR. & | * | |
| GINGER VILLA | * | JURY TRIAL |
| *PLAINTIFFS* | * | |
| | * | |
| VS. | * | |
| | * | |
| EVONIK CORPORATION, EVONIK | * | |
| MATERIALS CORPORATION, VERSUM | * | |
| MATERIALS PERFORMANCE | * | |
| MANUFACTURING, INC., AIR PRODUCTS | * | |
| PERFORMANCE MANUFACTURING, INC., | * | |
| TOMAH RESERVE, INC., SHELL OIL CO., | * | |
| RANDY CASHIO, JAMES CARTER, ARTIS | * | |
| WILLIAMS & KERRY HARRISON | * | |
| *DEFENDANTS* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## NOTICE OF REMOVAL

TO:   THE HONORABLE JUDGES OF
        THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF LOUISIANA

**NOW COMES** Evonik Corporation, successor in interest to Evonik Materials Corporation and Tomah Reserve, Inc. and formerly known as Air Products Performance Manufacturing, Inc. and Versum Materials Performance Manufacturing, Inc. (hereinafter, "Evonik"), which removes this action from the 40th Judicial District Court for the Parish of St. John the Baptist, State of Louisiana, pursuant to 28 U.S.C. §§ 1332, 1441, 1442(a)(1), and 1446. In support of this Notice of Removal, Evonik submits:

1

## INTRODUCTION

**1.**

On April 26, 2021, Lamar Ellis, Leroy Fortado, Sr., Kathrine Foster, Ervin Jack, Jr., Joyce Johnson, Geneiva Jones, Roslyn Joseph, Joan LeBeouf, Loritta Lumar, Margie Moore, Ramona Simoneaux, Aleshia Sylvain, August Tassin, Jr., and Ginger Villa (hereinafter collectively referred to as "Plaintiffs") filed a "Petition for Damages and Request for Jury Trial" in the 40th Judicial District Court for the Parish of St. John the Baptist, in an action entitled, *Lamar Ellis et al. versus Evonik Corporation, et al.*, No. C-76717.

**2.**

St. John the Baptist Parish is located within the jurisdiction of the Eastern District of Louisiana. 28 U.S.C. § 98(a).

**3.**

In accordance with 28 U.S.C. § 1446(a), Evonik attaches a copy of the complete trial court record, including but not limited to all process, pleadings, and orders served upon it, as Exhibit "A."

### THIS NOTICE OF REMOVAL IS TIMELY FILED

**4.**

The named defendants in Plaintiffs' suit are (1) Evonik Corporation, (2) Evonik Materials Corporation, (3) Versum Materials Performance Manufacturing, Inc., (4) Air Products Performance Manufacturing, Inc., (5) Tomah Reserve, Inc., (6) Shell Oil Co. ("Shell"), (7) Randy Cashio ("Cashio"), (8) James Carter ("Carter"), (9) Artis Williams ("Williams"), and (10) Kerry Harrison ("Harrison").

**5.**

Effective October 31, 2007, Tomah Reserve, Inc. merged into Air Products Performance Manufacturing, Inc., with Air Products Performance Manufacturing, Inc. being the survivor. On February 24, 2016, Air Products Performance Manufacturing, Inc. changed its name to Versum Materials Performance Manufacturing, Inc. On July 26, 2016, Versum Materials Performance Manufacturing, Inc. changed its name back to Air Products Performance Manufacturing, Inc. Effective February 27, 2017, Air Products Performance Manufacturing, Inc. changed its name to Evonik Materials Corporation. The aforesaid corporate histories are reflected in the public records of the Louisiana Secretary of State and of the Delaware Secretary of State.

**6.**

On July 1, 2019, Evonik Materials Corporation merged into Evonik Corporation, with Evonik Corporation being the survivor. As reflected in the public records of the Alabama Secretary of State and of the Delaware Secretary of State, Evonik Corporation is an Alabama corporation with its principal place of business in Parsippany, New Jersey.

**7.**

On May 5, 2021, Corporation Service Company, the registered agent for Evonik was served with process. On May 5, 2021, Shell Oil Co. was served with process. On April 29, 2021, Randy Cashio was served with process. On May 13, 2021, Artis Williams was served with process. On April 28, 2021, Kerry Harrison was served with process. Upon information and belief, James Carter has not been served with process as of the date of filing of this Notice of Removal.

**8.**

Therefore, this Notice of Removal is timely filed under 28 U.S.C. § 1446(b)(2)(B), as it has been filed in this Court within thirty days of service upon Evonik. No previous application for

removal has been made. This case is removed less than one year after commencement of the state court action in compliance with 28 U.S.C. § 1446(c).

### CONSENT FOR REMOVAL

**9.**

As is evidenced by the attached Exhibits "B" through "E," Evonik has obtained the consent of Shell, Williams, Cashio and Harrison to the removal of this case. Upon information and belief, Carter has not been served with process as of the time of this removal.

### BASIS FOR SUBJECT MATTER JURISDICTION

**10.**

Removal of this suit is proper because it is an action over which this Court has original jurisdiction under 28 U.S.C. § 1332(a), as it is an action between citizens of different states, and the matter in controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1441(a).

**11.**

Removal of this suit also is proper because it is an action over which this Court has original jurisdiction under 28 U.S.C. § 1442(a)(1), as it is an action against a person acting under an officer of the U.S. Environmental Protection Agency ("EPA").

### DIVERSITY JURISDICTION EXISTS

**12.**

Plaintiffs herein are natural persons. In determining diversity jurisdiction, the state where a natural person establishes domicile serves as the state of citizenship. *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2011). Here, Plaintiffs allege that they all reside in and are domiciled in the State of Louisiana (Petition at ¶¶ 12-25). Thus, taking these allegations as true, Plaintiffs are citizens of Louisiana.

4

**13.**

For purposes of diversity of citizenship subject matter jurisdiction, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

**14.**

As is evidenced by the records of the Louisiana Secretary of State, Evonik Corporation is an Alabama corporation with its principal place of business in Parsippany, New Jersey.

**15.**

As is evidenced by the records of the Louisiana Secretary of State, Shell is a Delaware corporation with its principal place of business in Houston, Texas. In plaintiffs' Petition for Damages, they admit that Shell is a corporation organized under the laws of Delaware with its principal place of business in Houston, TX. Petition at ¶ 31.

**16.**

As is evidenced by the records of the Louisiana Secretary of State, Tomah Reserve, Inc. is not an active corporation. It was the non-survivor of a merger and no longer exists. Accordingly, Tomah Reserve, Inc. does not exist, could not be properly joined and served, and cannot be considered for purposes of diversity jurisdiction.

**17.**

As is evidenced by the records of the Louisiana Secretary of State, Versum Materials Performance Manufacturing, Inc. is an inactive corporation. Air Products Performance Manufacturing, Inc. changed its name to Versum Materials Performance Manufacturing, Inc., which subsequently changed its name back to Air Products Performance Manufacturing, Inc.

Accordingly, Versum Materials Performance Manufacturing, Inc. does not exist, could not be properly joined and served, and cannot be considered for purposes of diversity jurisdiction.

18.

As is evidenced by the records of the Louisiana Secretary of State, Air Products Performance Manufacturing, Inc. changed its name to Evonik Materials Corporation. Accordingly, Air Products Performance Manufacturing, Inc. does not exist, could not be properly joined and served, and cannot be considered for purposes of diversity jurisdiction.

19.

On July 1, 2019, Evonik Materials Corporation merged into Evonik Corporation, with Evonik Corporation being the surviving entity.  Accordingly, Evonik Materials Corporation does not exist, could not be properly joined and served, and cannot be considered for purposes of diversity jurisdiction.

20.

Cashio, Carter, Williams, and Harrison are alleged to be Louisiana citizens.  However, they have been improperly joined because "there is no reasonable basis for the district court to predict that [Plaintiffs] might be able to recover against [them]." *Smallwood v. Illinois Cent. R. Co.,* 385 F.3d 568, 573 (5th Cir. 2004); *African Methodist Episcopal Church v. Lucien,* 756 F.3d 788, 793 (5th Cir. 2014) ("A mere theoretical possibility of recovery in state court will not preclude a finding of improper joinder.").

**21.**

Plaintiffs allege that Cashio is a site manager and was designated "Permit Responsible Party" in 2019 and 2020; Carter was a site manager and was designated "Permit Responsible Party" in 2017; Williams was a site manager and was designated "Permit Responsible Party" in 2016; and Harrison was a site manager and was designated "Permit Responsible Party" in 2008 (Petition at ¶¶ 32-35).

**22.**

Cashio, Carter, Williams and Harrison, former corporate employees, cannot be held liable to Plaintiffs under Louisiana law pursuant to *Canter v. Koehring Co.,* 283 So.2d 716 (La. 1973). To recover against Cashio, Carter, Williams and Harrison Plaintiffs would have to prove the following: "(1) [the employer of each individual] owed a duty of care to [Plaintiffs], the breach of which caused the damages for which recovery is sought; (2) [the employer of each individual] delegated its duty to [the individual]; and (3) [the individual] breached the delegated duty through 'personal (as contrasted with technical or vicarious) fault'; but (4) 'personal liability cannot be imposed upon [the individual] simply because of his general administrative responsibility for performance of some function of the employment.'" *Kemp v. CTL Distribution, Inc.,* 440 Fed. App'x 240, 245 (5th Cir. 2011) (quoting *Canter v. Koehring Co.,* 283 So.2d 716 (La. 1973)).

**23.**

The crux of Plaintiffs' claims is that ethylene oxide emissions from a chemical production facility have caused them damage.

**24.**

There is "no reasonable basis for the district court to predict that [Plaintiffs] might be able to recover against" Cashio, Carter, Williams and Harrison, as Plaintiffs cannot establish the latter

three requirements of the *Canter* analysis. There are no allegations or evidence that the employer delegated any duty it may have owed to Plaintiffs to Cashio, Carter, Williams and Harrison. There are no allegations or evidence of personal fault by Cashio, Carter, Williams, and Harrison. Any alleged fault of Cashio, Carter, Williams and Harrison would have been technical fault and fault for which the employer allegedly would have vicarious responsibility. There are no allegations or evidence Cashio, Carter, Williams and Harrison had personal dealings with any of the Plaintiffs. More significantly, Plaintiffs seek to impose liability upon Cashio, Carter, Williams and Harrison for performing general administrative responsibilities, such as signing regulatory permits, and/or some function of their employment, in contravention of *Canter*.

**25.**

Here, none of the individual, former corporate employees has or had responsibility in his individual capacity related to permitted facility emissions.

**26.**

The Evonik Reserve facility's "Responsible Official" verifies and documents facility compliance status so he or she can certify the truth, accuracy, and completeness of Evonik's regulatory compliance reports required by the EPA.

**27.**

Evonik is responsible for ensuring its business complies with applicable regulatory limitations, and it has not delegated that duty to any individual employee acting in his or her individual capacity. For example, the Evonik Reserve facility's "Responsible Official" is responsible for the Reserve facility's environmental compliance as an Evonik employee. He is not responsible for the Reserve facility's environmental compliance in either his individual capacity or by virtue of his having signed any document as a "Responsible Official." Indeed, the duty

associated with being a "Responsible Official" is limited to assuring that Evonik's regulatory submissions are true, accurate, and complete and so certifying. This duty is owed to EPA and the Louisiana Department of Environmental Quality ("LDEQ") alone.

28.

The general administrative responsibilities associated with the Evonik Reserve facility's "Responsible Official" to EPA and LDEQ do not confer a responsibility to minimize or cease Evonik's permitted emissions to protect the safety and well-being of the neighboring community and citizens. The duty associated with being a "Responsible Official" to EPA and LDEQ is limited to assuring (and certifying) that Evonik's regulatory submissions are true, accurate, and complete.

29.

Responsibility for the conduct of its facility operations remains, and has always remained, with Evonik. Defendant Evonik has not delegated personal responsibility to any of the individuals named in the Petition, nor has it delegated this responsibility to any other individual.

30.

No Evonik company employee – no matter how senior – bears the risk of individual liability for reasonable actions taken in the course of employment.

31.

Finally, Plaintiffs' recitation of bare allegations and allegations "upon information and belief" completely fail to state a claim for liability under *Canter* that can withstand a Rule 12(b)(6) analysis. Plaintiffs' bald assertions are not sufficient to impose personal liability for activities beyond "general administrative responsibility for performance of some function of the employment." Consequently, Cashio, Carter, Williams and Harrison are improperly joined, and their citizenship is ignored for purposes of removal on the basis of diversity.

9

32.

In an action such as this one, Article 893(A)(1) of the Louisiana Code of Civil Procedure precludes Plaintiffs from pleading a "specific monetary amount of damages." The fourteen plaintiffs in this action seek recovery of wrongful death and survival damages related to alleged development of cancer and increased risk of developing additional illnesses, including cancer, and date back ton as far as 1999 (Petition at ¶¶ 73-75, 247-250, 252). Plaintiffs allege damages consisting of pain and suffering; medical expenses; "permanent and/or partial physical disability and/or impairment"; "scarring and disfigurement"; loss of enjoyment of life; "future loss of income"; "future loss of earning capacity"; "fear and increased likelihood of development of cancer and other fatal and debilitating diseases"; "fear and increased likelihood of development of damage to vital organs, reproductive system and central nervous system"; "fear of early death"; wrongful death; and survival (Petition at ¶¶ 247-250, 252).

33.

Removal under § 1332 is proper if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." Under 28 U.S.C. § 1446(c)(2)(A)(ii) and (B), removal is proper "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)." Removing defendants satisfy the amount in controversy requirement if (1) "it is facially apparent that the claims are likely above" the amount in controversy or (2) "by setting forth the facts in controversy … that support a finding of the requisite amount." *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1335 (5th Cir. 1995).

34.

While Evonik denies liability and that it owes damages to Plaintiffs, on the face of Plaintiffs' petition it is apparent that each of the Plaintiffs is seeking damages exceeding $75,000,

10

exclusive of interest and costs. Plaintiffs seek survival and wrongful death damages related to alleged development of cancer and increased risk of developing additional illnesses, including cancer (Petition at ¶¶ 73-75, 247-250, 252). Given the nature and extent of the damages sought by Plaintiffs, it is "facially apparent" that each of the Plaintiffs is seeking an amount exceeding $75,000, exclusive of interest and costs.

35.

There is complete diversity among the Plaintiffs and properly joined and served defendants, and the amount in controversy is satisfied. Accordingly, this Court has diversity jurisdiction over this matter.

36.

Shell, Cashio, Williams and Harrison have consented to this removal, as evidenced by the attached notices of consent, identified as Exhibits "B" through "E."

37.

In accordance with 28 U.S.C. § 1446(d), Evonik will promptly give written notice of filing this Notice of Removal to all adverse parties, and will file a copy of this Notice of Removal with the Clerk of Court for the 40th Judicial District Court for the Parish of St. John the Baptist. A copy of this Notice of Filing of Notice of Removal is attached hereto as Exhibit "F."

**FEDERAL OFFICER JURISDICTION EXISTS**

38.

Evonik removes this action under 28 U.S.C. § 1442(a)(1), which allows removal of "'[a] civil action … that is against or directed to … any person acting under [a federal] officer … for or relating to any act under color of such office.'" *Latiolais v. Huntington Ingalls, Inc.,* 951 F.3d 286, 292 (5th Cir. 2020).

39.

Pursuant to Article 24 of the Louisiana Civil Code, Evonik is a juridical person under Louisiana law.

40.

Under section 1442(a), Evonik need only show "(1) it has asserted a colorable federal defense, (2) it is a 'person' within the meaning of the statute, (3) that has acted pursuant to a federal officer's directions, and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions." *Latiolais,* 951 F.3d at 296.

41.

A "colorable" federal defense does not require proof the person can "'win his case before he can have it removed.'" *Latiolais,* 951 F.3d at 296. "An asserted federal defense is colorable unless it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or 'wholly insubstantial and frivolous.'" *Latiolais,* 951 F.3d at 297.

42.

Plaintiffs' claims center on the alleged emission of the chemical ethylene oxide. Pursuant to 42 U.S.C. § 7412(b), ethylene oxide is listed by the EPA as a "hazardous air pollutant." Under 42 U.S.C. § 7412(a)(3) and (9), Evonik is an "owner or operator," a "person who owns, leases, operates, controls, or supervises a stationary source."

43.

"The Clean Air Act establishes a comprehensive system for protecting the country's air quality. 42 U.S.C. §§ 7401-7671. In this system, state and federal actors work together to reduce air pollution. The Clean Air Act 'requires the Administrator of EPA to promulgate NAAQS for each air pollutant for which "air quality criteria" have been issued under … 42 U.S.C. § 7408.'"

*State of Texas v. United States Environmental Protection Agency,* 983 F.3d 826, 830 (5th Cir. 2020).

**44.**

"Congress created the Clean Air Act 'to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare.' 42 U.S.C. § 7401(b)(1). The Clean Air Act, 42 U.S.C. §§ 7401, *et seq.,* is a comprehensive program for controlling and improving the nation's air quality. Under the Act, the Environmental Protection Agency identifies air pollutants that endanger the public health or welfare, determines the concentrations of those pollutants that are safe and promulgates those determinations as national ambient air quality standards. *See* 42 U.S.C. §§ 7408, 7409. Each state must ensure that its ambient air meets the appropriate NAAQS, *see* 42 U.S.C. § 7407(a), and must develop a state implementation plan to achieve the standards established by the EPA. *See* 42 U.S.C. § 7410(a). The Act requires state implementation plans to include "enforceable emission limitations and other control measures, means, or techniques ... as well as schedules and timetables for compliance" to meet the NAAQS. 42 U.S.C. § 7410(a)(2)(A). Upon approval by the EPA, the state implementation plan becomes federally enforceable. *Louisiana Envtl. Action Network v. EPA,* 382 F.3d 575, 579 (5th Cir.2004); *Kentucky Res. Council, Inc. v. EPA,* 304 F.Supp.2d 920, 923 (W.D.Ky.2004); *Sweat v. Hull,* 200 F.Supp.2d 1162, 1164 (D.Ariz.2001). For entities regulated under the Clean Air Act, '[t]he burden is clearly on the source to do whatever is necessary to assure compliance.'" 45 Fed.Reg. 59,874, 59,877 (Sept. 11, 1980). *St. Bernard Citizens for Environmental Quality, Inc. v. Chalmette Refining, L.L.C.,* 399 F.Supp.2d 726, 730 (E.D. La. 2005).

**45.**

The U.S. EPA regulates emissions and permitting for ethylene oxide. 40 C.F.R. §§ 70.1, 70.5.

**46.**

The EPA's authority and control over the regulation and permitting for emissions of ethylene oxide is evident in the Petition to the Administrator, United States Environmental Protection Agency filed on May 6, 2021 on behalf of Concerned Citizens of St. John ("CCSJ"), May 6, 2021, wherein CCSJ requests emergency action under the Clean Air Act.

**47.**

Evonik has colorable federal defenses. Evonik's compliance with Clean Air Act regulations and permitting are a defense to claims it has breached any alleged duty owed to Plaintiffs. Evonik intends to raise a defense that Plaintiffs' claims seek to supplant federal common law. Evonik also intends to raise defenses under the Commerce and Due Process Clauses of the U.S. Constitution.

**48.**

The EPA and its federal officers exercise extensive and absolute federal control over ethylene oxide emissions and permitting, including specific details of the requirements for issuance of a permit and approval of such permits. Evonik has acted pursuant to a federal officer's directions by submitting and obtaining a permit for emissions controlled under federal standards by the EPA and its federal officers. Evonik's actions are in compliance with the dictates of a federal officer with respect to ethylene oxide emissions.

**49.**

The conduct Plaintiffs charge against Evonik is associated or connected with Evonik's actions complying with a federal officer's dictates for obtaining a permit relating to emitting ethylene oxide, all of which is under a federal officer's supervision and control.

**50.**

Evonik was "acting under" an "officer . . . of the United States or [an] agency thereof" within the meaning of § 1442(a)(1) because the government exerted some "subjection, guidance, or control," over Evonik's actions at its Reserve facility and because Evonik engaged in an effort "to assist, or to help carry out, the duties or tasks of the federal superior" through government mandates and contracts. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 151-52 (2007).

**51.**

The operations at Evonik's Reserve facility are conducted pursuant to a Title V permit issued under the CAA, the federal statute that provides a comprehensive system by which federal and state resources are deployed to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1).

**52.**

The emissions at issue in Plaintiffs' Petition are the result of highly regulated activity controlled and overseen by federal officers. Plaintiffs' claims against Evonik are claims "for or related to" acts performed under color of federal office within the meaning of the text of 28 U.S.C. § 1442(a)(1) because the charged conduct is "connected or associated with" an act under a federal officer's direction. *Latiolais*, 951 F.3d at 292.

**53.**

Evonik raises a colorable federal defense to Plaintiffs' claims in this action, namely that (1) Evonik's compliance with its Clean Air Act Title V permit provides the standard of care applicable to this action; (2) under the CAA and implementing regulations the individuals' duties as "permit responsible officials" are only to certify the truth, accuracy, and completeness of the permit-related documents, not to reduce emissions from Evonik's Reserve facility; and (3) one or more of Plaintiffs' claims are preempted by federal law because the Clean Air Act displaces those claims.

**54.**

Because this Court has federal officer jurisdiction over at least one claim asserted by Plaintiffs, it has supplemental jurisdiction over all of the Plaintiffs' claims. *Savoie v. Huntington Ingalls, Inc*, 817 F.3d 457, 463 (5th Cir. 2016); 28 U.S.C. § 1367(a).

**55.**

If any question arises as to the propriety of the removal of this action, Evonik respectfully requests the opportunity to brief any disputed issues and to present oral argument in support of its position that this action is properly removable.

**56.**

Evonik files this Notice of Removal without waiving its right to assert any objections, exceptions, and/or defenses to Plaintiffs' Petition available under federal or state law.

**57.**

Evonik reserves the right to supplement and/or amend this Notice of Removal.

**WHEREFORE**, Evonik Corporation, prays that this Notice of Removal be deemed sufficient and that this civil action proceed in this Honorable Court.

> Respectfully submitted,
>
> **ADAMS AND REESE LLP**
>
> */s/ Roland M. Vandenweghe, Jr.*
> **ROLAND M. VANDENWEGHE, T.A. (#25283)**
> **CHARLES A. CERISE, JR. (#1755)**
> **DON S. MCKINNEY (#26685)**
> **ERICA P. SENSENBENNER (#38400)**
> 701 Poydras St., Suite 4500
> New Orleans, Louisiana 70139
> Telephone:    (504) 581-3234
> Facsimile:    (504) 566-0210
> roland.vandenweghe@arlaw.com
> charles.cerise@arlaw.com
> don.mckinney@arlaw.com
> erica.sensenbrenner@arlaw.com
> *Counsel for Named Defendant,*
> *Evonik Corporation*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing *Notice of Removal* has been delivered to all counsel of record via electronic mail on this **4th** day of **June**, 2021.

> */s/ Roland M. Vandenweghe, Jr.*
> **ROLAND M. VANDENWEGHE, JR.**