UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LAMAR ELLIS, ET AL.                                    CIVIL ACTION

VERSUS                                                 NO. 21-1089

EVONIK CORPORATION, ET AL.                    SECTION "R" (3)

## ORDER AND REASONS

Before the Court is plaintiffs' motion to remand.[1]  Defendants Evonik Corporation ("Evonik"), Shell Oil Company ("Shell"), and Artis Williams oppose the motion.[2]  Because the Court finds that the nondiverse defendants were improperly joined, the Court denies plaintiffs' motion to remand and dismisses plaintiffs' claims against those defendants.

## I.    BACKGROUND

This case arises out of alleged exposure to ethylene oxide ("EtO") near a petrochemical plant in Reserve, Louisiana (the "facility"), owned and operated by defendants Evonik and Shell.[3]  Plaintiffs are fourteen Louisiana residents who live within seven miles of the facility,[4] and who have either

---

[1]    R. Doc. 19.
[2]    R. Docs. 20, 21 & 22.
[3]    R. Doc. 1-1 ¶ 1.
[4]    *Id.* ¶¶ 12-25, 80-93.

1

contracted cancer, or had a spouse contract and die from cancer, allegedly because of unknowing exposure to dangerous levels of EtO emitted by the facility.[5]

On April 26, 2021, plaintiffs filed suit in the Civil District Court for the Parish of St. John the Baptist, alleging that inhalation of EtO emitted from the facility was a substantial factor in causing plaintiffs' cancer, or their spouses' cancer.[6]  In their complaint, plaintiffs name as defendants Evonik Corporation and Shell Oil Company,[7] as well as four individual defendants (the "employee defendants" or the "employees"): Randy Cashio,[8] James Carter,[9] Artis Williams,[10] and Kerry Harrison.[11]  Plaintiffs allege that the employee defendants were designated as Responsible Officials ("ROs") who provided emissions information to state regulators at the Louisiana

---

[5]   *Id.* ¶¶ 1, 7-8.

[6]   *Id.* ¶¶ 1-9.

[7]   *Id.* ¶¶ 26, 31.  In their complaint, plaintiffs named other corporate entities, including Evonik Materials Corporation, Versum Materials Performance Manufacturing, Inc., Air Products Performance Manufacturing, Inc., and Tomah Reserve, Inc.  *Id.* ¶¶ 27-30. Defendants represent, and plaintiffs do not dispute, that Evonik Corporation is the successor in interest of those entities. R. Doc. 1 ¶¶ 5-6; R. Doc. 19-1 at 1 n.1.  Accordingly, the only corporate defendants in this matter are Evonik Corporation and Shell Oil Company.

[8]   R. Doc. 1-1 ¶ 32.

[9]   *Id.* ¶ 33.  Defendant James Carter has not been served in this action. *See id.* at 59-60.

[10]   *Id.* ¶ 34.

[11]   *Id.* ¶ 35.

Department of Environmental Quality ("LDEQ"), and who knew or should have known that the facility was emitting unsafe levels of EtO into the surrounding community.[12]  Plaintiffs allege negligence[13] and civil battery[14] against the four employee defendants.   The employee defendants are residents of Louisiana.[15]

On June 4, 2021, Evonik removed the case to federal court, contending that the non-diverse employee defendants were improperly joined, and that, therefore, this Court has diversity jurisdiction under 28 U.S.C. § 1332.[16] Evonik further contends that this Court has federal-officer jurisdiction under 28 U.S.C. § 1442.[17]

Plaintiffs now move to remand the case to state court.[18]  They argue that the employee defendants were not improperly joined because plaintiffs have shown a possibility of recovery against the employee defendants under

---

[12]   *Id.* ¶¶ 61-71.

[13]   *Id.* ¶¶ 203-207 ("Count 19 – Negligence of James Carter"); *id.* ¶¶ 215-219 ("Count 21 – Negligence of Artis Williams"); *id.* ¶¶ 226-230 ("Count 23 – Negligence of Randy Cashio"); *id.* ¶¶ 237-240 ("Count 25 – Negligence of Kerry Harrison").

[14]   *Id.* ¶¶ 208-213 ("Count 20 – Civil Battery by James Carter"); *id.* ¶¶ 220-225 ("Count 22 – Civil Battery by Artis Williams"); *id.* ¶¶ 231-236 ("Count 24 – Civil Battery by Randy Cashio"); *id.* ¶¶ 241-246 ("Count 26 – Civil Battery by Kerry Harrison").

[15]   *See id.* ¶¶ 32-35; R. Doc. 1 ¶ 20.

[16]   R. Doc. 1 ¶¶ 20-37.

[17]   *Id.* ¶¶ 38-54.

[18]   R. Doc. 19.

Louisiana state law.[19]   They contend that, because the in-state employee defendants were properly joined, the parties in the case are not completely diverse, and therefore this Court lacks diversity jurisdiction.[20]   Plaintiffs also argue that the Court does not have federal-officer jurisdiction.[21]   Accordingly, they ask the Court to remand the case for lack of jurisdiction.[22]

Defendants Evonik, Shell, and Williams oppose the motion to remand.[23]   They argue that plaintiffs have failed to show a possibility of recovery against the employee defendants because the employee defendants did not owe, nor breach, a personal duty to plaintiffs.[24]   Defendants contend that joinder of the employee defendants was therefore improper, and that the Court thus has diversity jurisdiction over the dispute.[25]   They further argue that this Court has federal-officer jurisdiction over the dispute.[26]

The Court considers the parties' arguments below.

---

[19]   R. Doc. 19-1 at 6-18.
[20]   *Id.*
[21]   *Id.* at 19-25.
[22]   *Id.* at 25.
[23]   R. Docs. 20, 21 & 22.
[24]   R. Doc. 20 at 6-15.
[25]   *Id.* at 20.
[26]   *Id.* at 16-20.

## II.   LEGAL STANDARD

A defendant may generally remove a civil action filed in state court if the federal court has original jurisdiction over the action.  *See* 28 U.S.C. § 1441(a).  The removing party bears the burden of showing that federal jurisdiction exists.  *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).  In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that removal statutes should be strictly construed.  *See, e.g.*, *Manguno v. Prudential Prop. & Cas. Ins.*, 276 F.3d 720, 723 (5th Cir. 2002); *Neal v. Kawasaki Motors Corp.*, No. 95-668, 1995 WL 419901, at *2 (E.D. La. July 13, 1995).  Though the Court must remand the case to state court if at any time before the final judgment it appears that it lacks subject matter jurisdiction, the Court's jurisdiction is fixed as of the time of removal.  28 U.S.C. § 1447(c); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996).

For diversity jurisdiction to exist, the amount in controversy must exceed $75,000, and there must be complete diversity between plaintiffs and defendants.  *See* 28 U.S.C. § 1332(a); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978).  Having a plaintiff and a defendant who are citizens of the same state ordinarily destroys complete diversity.  *See McLaughlin v.*

*Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004).  Therefore, when a non-diverse party is properly joined as a defendant, no defendant may remove the case under 28 U.S.C. § 1332.

A defendant may remove by showing that a non-diverse party was improperly joined. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004).  Because this is a narrow exception to the rule of complete diversity, the burden of demonstrating improper joinder is a heavy one.  *Id.* at 574.  A defendant may establish improper joinder by showing either: "(1) actual fraud in pleading jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse defendant."  *Id.*  at 573.  To determine whether the latter showing has been made, courts ask "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."  *Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016) (quoting *Smallwood*, 385 F.3d at 573).

"In analyzing whether a plaintiff has demonstrated a reasonable possibility of recovery, the district court may 'conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine

whether the complaint states a claim under state law against the in-state defendant.'" *Menendez v. Wal-Mart Stores, Inc.*, 364 F. App'x 62, 69 (5th Cir. 2010) (per curiam) (quoting *Smallwood*, 385 F.3d at 573). The Fifth Circuit has explained that, "if a plaintiff can survive a Rule 12(b)(6) challenge for failure to state a claim, there is ordinarily no improper joinder." *Davidson*, 819 F.3d at 765 (citing *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 401 (5th Cir. 2013)).

As in the Rule 12(b)(6) context, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 200 (5th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 239 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

The Court may take judicial notice of public records while conducting this 12(b)(6)-type analysis. *See Viking Constr. Grp., LLC et al. v. Satterfield*

& *Pontikes Constr. Grp., et al.*, No 17-12838, 2018 WL 398751, at *4 n.18 (E.D. La. Jan. 12, 2018); *Rantz v. Shield Coat, Inc.*, No. 17-3338, 2017 WL 3188415, at *5 (E.D. La. July 26, 2017). And if the plaintiff has misstated or omitted discrete facts relevant to the court's improper-joinder analysis, the court "may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Smallwood*, 385 F.3d at 573.

Here, the Court pierces the pleadings solely to consider declarations signed by the in-state employee defendants, submitted as part of Evonik's opposition to plaintiffs' motion to remand.[27] The declarations attest to the employees' job responsibilities, as well as other "discrete facts that . . . determine the propriety of joinder." *Id.*; *see also Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 312 (5th Cir. 2005) (affirming, in a toxic-tort case, the trial court's consideration of non-pleading evidence because "the defendants may submit affidavits and deposition transcripts," and plaintiffs may, "in support of their motion to remand, . . . submit affidavits and deposition transcripts along with the factual allegations contained in the verified complaint" (quoting *B. Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981))); *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990) ("When determining fraudulent joinder, the district court may look to

---

[27]   R. Docs. 20-2, 20-3 & 20-4.

8

the facts established by summary judgment evidence as well as the controlling state law.  Hence, the trial court properly considered affidavits and depositions in ruling on the plaintiffs' motion to remand.").

## III.  DISCUSSION

### A.    Negligence Claims

Plaintiffs contend that the in-state employee defendants were properly joined because there is a possibility that the employee defendants could be held liable for plaintiffs' injuries under state law.[28]  Under Louisiana law, an employee can be held individually liable for injuries to third persons under certain limited circumstances.  In *Canter v. Koehring Co.*, 283 So. 2d 716 (La. 1973), *superseded by statute on other grounds*, La. Rev. Stat. § 23:1032, the Louisiana Supreme Court held that an employee may be personally liable to third parties only if four distinct criteria are satisfied:

1.    The principal or employer owes a duty of care to the third person . . . , breach of which has caused the damage for which recovery is sought.

2.    This duty is delegated by the principal or employer to the defendant.

3.    The defendant . . . has breached this duty through personal (as contrasted with technical or vicarious) fault.  The breach occurs when the defendant has failed to discharge

---

[28]    R. Doc. 19-1 at 6-18.

the obligation with the degree of care required by ordinary prudence under the same or similar circumstances—whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.

4. [P]ersonal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment.  He must have a personal duty towards the injured plaintiff, breach of which specifically caused the plaintiff's damages.

*Id.* at 721; *see also Anderson v. Ga. Gulf Lake Charles, LLC*, 342 F. App'x 911, 916 (5th Cir. 2009) ("*Canter*'s four-part test is used to determine whether an employee is individually liable to third persons, even if they are not co-employees." (quoting *In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 386 (5th Cir. 2009))).  Courts find personal liability under *Canter* only in "limited circumstances." *Banks v. Wal-Mart, Inc.*, No. 18-749, 2018 WL 4001289, at *3 (W.D. La. Aug. 6, 2018).

Here, plaintiffs seek to impose *Canter* liability on the four employee defendants because each was designated as a Responsible Official ("RO") at some point during the years preceding the commencement of this action.[29] Plaintiffs allege that, as ROs, the employee defendants "certified that

---

[29]   R. Doc. 1-1 ¶¶ 61-71.

information provided to LDEQ regarding EtO emissions from the facility [was] true, accurate, and complete."[30]  Plaintiffs do not allege that any of the employees submitted false or misleading information to LDEQ.  They instead allege that:

> On information and belief, each of the Facility Manager Defendants had the authority to shut down emissions of EtO from the facility and implement changes to emissions controls and systems necessary to reduce dangerous emissions of EtO, but none of the Facility Manager Defendants exercised their authority to take steps to protect the community surrounding the facility by reducing emission levels or shutting the facility down until emissions levels could be lowered to safe levels.[31]

The Court finds multiple problems with plaintiffs' theory of *Canter* liability for the employee defendants.  First, to the extent that Evonik and Shell owed a duty not to harm the community surrounding the facility, the Court finds that the employers did not "delegate[]" any such duty to the employee defendants when they selected them as ROs.  *See Canter*, 283 So. 2d at 721.  On the contrary, the employee defendants represent in sworn declarations that "[t]he duty associated with being a 'Responsible Official' . . . was limited to assuring (and certifying) that [the facility]'s regulatory

---

[30]     *Id.* ¶ 62.
[31]     *Id.* ¶ 67.

submissions were true, accurate, and complete."[32]   Further, plaintiffs'

complaint indicates that the RO position has rotated among various

personnel nearly every year.[33]   The temporary nature of the role further

suggests that the RO designation did not endow the employee defendants

with the power or responsibility to reduce or control the facility's EtO

emission levels.   The Court finds that the employee defendants were not, by

virtue of their RO designations, delegated their employers' duties with regard

to determining or ensuring safe emission levels.   Their duty was to verify and

submit regulatory documents to LDEQ.   And these duties are precisely the

types of "general administrative responsibilit[ies]" for which "personal

liability cannot be imposed."   *Id.*; *see also Brady v. Wal-Mart Stores, Inc.*,

907 F. Supp. 958, 960 (M.D. La. 1995) (rejecting a plaintiff's attempt "impose

liability on [the defendant] for breaches of his general administrative duties

as store manager").

Plaintiffs' other attempts to allege delegation of a duty are similarly

insufficient.   For instance, plaintiffs contend that, as ROs, the employee

---

[32]   R. Doc. 20-2 ¶ 6 (Declaration of Artis Williams); R. Doc. 20-3 ¶ 6 (Declaration of Kerry Harrison); R. Doc. 20-4 ¶ 6 (Declaration of Randy Cashio).

[33]   Plaintiffs allege that Kerry Harrison was an RO in 2008, R. Doc. 1-1 ¶ 71, that Artis Williams was an RO in 2016, *id.* ¶ 70, that James Carter was an RO in 2017, *id.* ¶ 69, and that Randy Cashio was an RO in 2019 and 2020, *id.* ¶ 68.

defendants were required by state regulation to bear responsibility for the facility's EtO emissions.[34]   Specifically, plaintiffs point to a Louisiana regulation defining a corporation's "Responsible Official" as:

> a president, secretary, treasurer, or vice-president of the corporation in charge of a principal business function, *or* any other person who performs similar policy or decision-making functions for the corporation, *or* a duly authorized representative of such person if the representative is responsible for the overall operation of one or more manufacturing, production, or operating facilities applying for or subject to a permit and either:
>
> i.    the facilities employ more than 250 persons or have gross annual sales or expenditures exceeding $25 million (in second quarter 1980 dollars); or
>
> ii.   the delegation of authority to such representatives is approved by the permitting authority prior to submittal of any certification by such person.

La. Admin. Code tit. 33, § 502(A) (emphasis added).   The regulation suggests that, because none of the employee defendants are the "president, secretary, treasurer, or vice-president of the corporation," *id.*, each must be either a "person who performs similar policy or decision-making functions for the corporation," *id.*, or a "duly authorized representative of such person," who "is responsible for the overall operation of one or more manufacturing, production, or operating facilities," *id.*  But the regulatory definition does not require ROs to have the authority or duty to determine what emissions levels

---

[34]    R. Doc. 19-1 at 4 n.4; R. Doc. 25 at 4-6.

are safe, to require changes in emissions levels, or to shut down the facility, much less to evaluate the safety of emissions levels in the surrounding community. And plaintiffs allege no further facts suggesting that the employee defendants had any such responsibilities. The complaint states that defendant Randy Cashio was a plant manager,[35] and that defendants James Carter, Artis Williams, and Kerry Harrison were each "site manager[s]" at the facility.[36] The complaint also states that Cashio "holds a degree in chemical engineering."[37] But the complaint alleges no facts as to what the actual duties of these individuals were, much less facts suggesting that they were tasked with independently ascertaining what levels of emissions were safe.[38] Indeed, the employee defendants attested in their declarations that "at no time during [their] employment" were they assigned

---

[35]   R. Doc. 1-1 ¶ 68. Cashio testifies in his affidavit that he was employed at the facility as a "Site Manager." R. Doc. 20-4 ¶ 1.

[36]   R. Doc. 1-1 ¶¶ 69-71.

[37]   *Id.* ¶ 68.

[38]   Plaintiffs allege that the facility caused unauthorized releases of EtO in 2012 and 2013. *Id.* ¶ 59. But this alleged fact does not support a theory of *Canter* liability as to these defendants, who were not ROs or site managers at the time of the alleged releases. James Carter is alleged to have been a site manager in 2017 and 2018, and an RO in 2017. *Id.* ¶ 69. Artis Williams attested that he was a site manager and RO in 2016. R. Doc. 20-2 ¶¶ 1, 3. Kerry Harrison attested that he was a site manager and RO in 2008. R. Doc. 20-3 ¶¶ 1, 3. Randy Cashio attested that was a site manager and RO in 2019 and 2020. R. Doc. 20-4 ¶¶ 1, 3. None of these dates coincide with the alleged "unauthorized" release of EtO.

to determine what levels of emissions were safe, whether the surrounding community was exposed to unsafe levels of emissions, whether EtO levels needed to be reduced in order to be safe, or whether there was any other reason to reduce or limit EtO emissions from the facility.[39]   Accordingly, plaintiffs' allegations fall short of plausibly alleging that the employee

---

[39]   Each employee attested to the following in a sworn declaration:

> At no time during my employment . . . at [the facility] was I ever assigned to (1) determine what levels of emissions were "safe" and whether persons living in the surrounding community were being exposed to unsafe levels of ethylene oxide being emitted from [the facility], (2) determine whether persons living in the surrounding community were at an increased risk of developing cancer as a result of such ethylene oxide emissions, (3) determine whether the levels of ethylene oxide being emitted from [the facility] were "dangerous," (4) determine whether the levels of ethylene oxide being emitted from [the facility] needed to be reduced in order to be "safe," (5) determine whether there were health risks posed by the levels of ethylene oxide being emitted by the facility, (6) determine whether any warnings to the persons living in the surrounding community of health risks posed by the levels of ethylene oxide being emitted were warranted, (7) confirm that ethylene oxide was a potential carcinogen[] at the time of any such emissions, or (8) determine whether there was any reason to reduce or limit ethylene oxide emission from [the facility].

R. Doc. 20-2 ¶ 9 (Declaration of Artis Williams); R. Doc. 20-3 ¶ 9 (Declaration of Kerry Harrison); R. Doc. 20-4 ¶ 9 (Declaration of Randy Cashio).

defendants had a duty to reduce or determine the safety of the levels of EtO emissions from the facility.

Moreover, plaintiffs' conclusory allegation that the employee defendants had actual knowledge of the health risks of EtO is insufficient to give rise to *Canter* liability. Plaintiffs allege that the employees had "actual knowledge of the potentially carcinogenic qualities of EtO . . . because their respective roles at the facility required them to be aware of the health effects of EtO which were widely known to those in their industry to cause cancer."[40] This speculative claim about "industry" knowledge of EtO's "potentially carcinogenic qualities," falls far short of sufficiently alleging that these four employees had actual knowledge of a particular health risk. In *Canter* cases, where actual knowledge of a hazard is alleged, courts require that the employee-defendant have actually known of a discrete, imminent risk, which ultimately leads to a plaintiff's injuries. *Compare Ford v. Elsbury*, 32 F.3d 931, 939 (5th Cir. 1994) (finding that *Canter* liability was possible as to a plant manager when employees testified that they had complained of a leaky reactor and an unsafe work area, that management had not acted, and that the manager said, "[s]ometimes you have to overlook safety to get the job done"), *Garrett v. AEP River Ops., LLC*, No. 15-5562, 2016 WL 945056, at

---

[40]     R. Doc. 1-1 ¶ 66.

*4 (E.D. La. Mar. 14, 2016) (finding that *Canter* liability was possible when the employee-defendant did not contest that he had been informed of the allegedly harmful conduct), *and Hayden v. Phillips Petroleum Co.*, 788 F. Supp. 285, 287 (E.D. La. 1992) (finding that an employee's alleged personal knowledge of a dangerous pipeline could give rise to *Canter* liability), *with Guillory*, 434 F.3d at 312 (finding no possibility of *Canter* liability for two chemical-plant safety managers because there was "no basis for concluding that either individual had any knowledge of whether any steps were taken" to prevent additional chemical releases after prior incidents at the facility), *and Gautreau v. Lowe's Home Ctr., Inc.*, No. 12-630, 2012 WL 7165280, at *4 (M.D. La. Dec. 19, 2012) (finding that plaintiff could not state a claim against a store manager because plaintiff alleged no facts indicating the manager "actively contributed to or had any personal knowledge of a harmful condition" in the display that caused plaintiff's injury).  Here, plaintiffs do not derive the employee defendants' alleged knowledge from particular facts indicating knowledge, but instead bootstrap alleged "industry knowledge" of "potential[]" carcinogenic effects to the employees' roles as ROs.  The Court finds that plaintiffs' allegation that the employee defendants "had actual knowledge" of "potential[]" harm is far too general, remote, and conclusory to support a claim under *Canter*.

Furthermore, *Canter* requires that, for an employee-defendant to be liable, they "must have a *personal* duty towards the injured plaintiff, breach of which specifically caused the plaintiff's damages."  283 So. 2d at 721 (emphasis added).   Here, plaintiffs fail to allege that the employee defendants owed a duty that was *personal* to these plaintiffs.  The Court is aware of no *Canter* cases where a court found that an employee-defendant owed a plaintiff a personal duty when, as here, the plaintiff is not a co-employee, and plaintiff's alleged injuries took place off the employer's premises. *Compare Savoy v. Swift Energy Operating Co.*, No. 12-167, 2012 WL 2343169, at **5-6  (E.D. La. June 20, 2012) (finding that a wellhead owner owed a duty to a contractor working on his property), *Bryant v. Exxon Mobil Corp.*, No. 10-532, 2011 WL 3163147, at *5 (M.D. La. May 19, 2011), *report and recommendation adopted*, 2011 WL 3207817, at *1 (M.D. La. July 26, 2011) (finding that managers at a chemical facility owed an employee-plaintiff a personal duty to create a safe working environment), *and Caire v. Murphy Oil*, No. 13-4765, 2013 WL 5350615, at *3 (E.D. La. Sept. 13, 2013) (finding that "there exists an issue of fact as to whether the individual employee-defendants were delegated personal responsibility over the health and safety of invitees on their employer's premises"), *with Kemp v. CTL Distrib., Inc.*, 440 F. App'x 240, 246 (5th Cir. 2011) (finding that a truck-

18

terminal manager owed no personal duty to a non-employee plaintiff who was injured in the truck terminal), *and Gulotta v. Dow Chem. Co.*, No. 05-370, 2006 WL 8433368, at **4-5 (M.D. La. Feb. 9, 2006) (finding that plant managers owed no personal duty to a plaintiff who allegedly developed cancer because of harmful emissions in the community near the plant).

Furthermore, the Louisiana Supreme Court has held that, "in order for personal liability to attach under *Canter*, '[the defendant] must have some personal contact with and responsibility towards the injured employee.'" *Kemp*, 440 F. App'x at 246 (quoting *Esco v. Smith*, 468 So. 2d 1169, 1175 (La. 1985)).  Here, not only are the plaintiffs neither employees or visitors at the facility, but also, the employees each testified that they have never had any interaction or contact with the plaintiffs or their family members.[41]  The Court finds that plaintiffs cannot show that the employee defendants owed a duty that was personal to plaintiffs.

Accordingly, the Court finds that plaintiffs are unable to "establish a cause of action against the non-diverse defendant[s]" under *Canter*. *Smallwood*, 385 F.3d at 573.  Therefore, as to plaintiffs' negligence claims

---

[41]   R. Doc. 20-2 ¶ 13 (Declaration of Artis Williams); R. Doc. 20-3 ¶ 13 (Declaration of Kerry Harrison); R. Doc. 20-4 ¶ 13 (Declaration of Randy Cashio).

against the four employee defendants,[42] joinder was improper.  The Court dismisses plaintiffs' negligence claims as to Randy Cashio, James Carter, Artis Williams, and Kerry Harrison.

## B.   Battery Claims

Plaintiffs rest their improper-joinder argument entirely on the assertion that their claims against the employee defendants have merit under *Canter*.  But *Canter* speaks only to a breach of a duty, *i.e.*, negligence, and suggests no application to intentional torts.  And here, plaintiffs' complaint alleges both negligence and civil battery against the four employee defendants.[43]  Because *Canter* does not facially speak to intentional torts, the Court proceeds to determine whether plaintiffs have plausibly alleged a civil-battery cause of action against the non-diverse defendants.  *See Smallwood*, 385 F.3d at 573.  If plaintiffs have done so, then joinder was not improper, and the Court must remand.

---

[42]   R. Doc. 1-1 ¶¶ 203-207 ("Count 19 – Negligence of James Carter"); *id.* ¶¶ 215-219 ("Count 21 – Negligence of Artis Williams"); *id.* ¶¶ 226-230 ("Count 23 – Negligence of Randy Cashio"); *id.* ¶¶ 237-240 ("Count 25 – Negligence of Kerry Harrison").

[43]   *Id.* ¶¶ 208-213 ("Count 20 – Civil Battery by James Carter"); *id.* ¶¶ 220-225 ("Count 22 – Civil Battery by Artis Williams"); *id.* ¶¶ 231-236 ("Count 24 – Civil Battery by Randy Cashio"); *id.* ¶¶ 241-246 ("Count 26 – Civil Battery by Kerry Harrison").

Under Louisiana law, a battery is a "harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact." *Caudle v. Betts*, 512 So. 2d 389, 391 (La. 1987).  For the act to be intentional, the actor must either "(1) consciously desire the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) know that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result." *Batiste v. Bayou Steel Corp.*, 45 So. 3d 167, 168 (La. 2010).

Here, plaintiffs lodge identical battery allegations against all four employee defendants.  Specifically, plaintiffs allege that each of the individual employees "intended for the facility to release emissions of EtO,"[44] and "knew that the intended emissions . . . would make contact with and be inhaled by the individuals living in close proximity to the facility, which included Plaintiffs."[45]  They further allege that each employee defendant "knew to a substantial certainty that inhalation of EtO would cause serious health risks and increased risks of cancer to those individuals living in close

---

[44]    *Id.* ¶¶ 208, 220, 231 & 241.
[45]    *Id.* ¶¶ 209, 221, 232 & 242.

proximity to the facility who inhaled the chemical,"[46] and that plaintiffs' inhalation of EtO was nonconsensual.[47]

The Court finds that plaintiffs have not plausibly alleged viable battery claims against the employee defendants. Plaintiffs have premised their battery claim not on the employee defendants' actions, but instead on their *inaction*. Plaintiffs allege that the employee defendants did not "take steps to protect the community surrounding the facility by reducing emission levels or shutting the facility down until emission levels could be lowered to safe levels."[48] Nowhere do plaintiffs allege that the employees committed an affirmative "act" intended to cause any harmful contact with the plaintiffs or their spouses. *Caudle*, 512 So. 2d at 391. Plaintiffs merely assert that the employees did *not* take certain steps to lower or shut off EtO emissions.

The Court is aware of no Louisiana case accepting plaintiffs' theory of battery-by-omission. And other states have explicitly held that battery requires an affirmative act; inaction or omissions do not suffice. *See Hoyte v. Stauffer Chem. Co.*, No. 98-3024, 2002 WL 31892830, at *52 (Fla. Cir. Ct. 2002) (citing *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. Dist. Ct. App. 1996)) ("Battery requires an intentional affirmative act by the defendant and

---

[46]   *Id.* ¶¶ 210, 222, 233 & 243.
[47]   *Id.* ¶¶ 211-213, 223-225, 234-236, 244-246.
[48]   *Id.* ¶ 67.

cannot be predicated upon an omission or failure to act."); *Hunter v. Shenango Furnace Co.*, 527 N.E.2d 871, 873-74 (Ohio 1988) (rejecting a battery claim because the "actual nature of the action [did] not claim an overt, positive or affirmative act on the part of the defendant"); *D.D.Z. & D.Z. v. Molerway Freight Lines, Inc.*, 880 P.2d 1, 4 (Utah Ct. App. 1994) (rejecting a battery claim where a company manager who allegedly witnessed the act failed to intervene); *see also Faust v. Greater Lakeside Corp.*, 797 So. 2d 748, 753-54 (La. App. 4 Cir. 2001) (finding that, while an employer may have been "negligent or even grossly negligent" for failing to conduct background checks, implement security measures, and act on threats of a store robbery, its inaction did not "constitute[] an intentional tort"); *Evans v. Int'l Paper Co.*, No. 10-1916, 2011 WL 1898912, at *6 (W.D. La. Mar. 24, 2011) ("Mere knowledge and appreciation of risk does not constitute intent, nor does reckless or wanton conduct or gross negligence." (citing *Landry v. Uniroyal Chem. Co.*, 653 So. 2d 1199, 1203 (La. App. 1 Cir. 1995))).  For this reason alone, plaintiffs' battery claims against the employee defendants are without merit.

Furthermore, plaintiffs do not plead any facts supporting their conclusory recitation of the elements of battery.  While plaintiffs broadly assert that the employee defendants "knew that the intended emissions . . .

would make contact with and be inhaled by . . . Plaintiffs,"[49] and "knew to a substantial certainty that inhalation of EtO would cause serious health risks and increased risks of cancer to those individuals,"[50] these allegations amount to "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (cleaned up) (citations omitted).  And plaintiffs' conclusory assertion elsewhere in their complaint that the employee defendants "unquestionably knew that the EPA had concluded that EtO was a likely carcinogen"[51] is not based on particularized facts, and does not remedy this deficiency.   Moreover, even accepting that allegation as true, mere knowledge of a possible danger does not give rise to a battery claim.  *See Evans*, 2011 WL 1898912, at *6 ("Mere knowledge and appreciation of risk does not constitute intent . . . ." (citing *Landry*, 653 So. 2d at 1203)); *cf. Armstead v. Schwegmann Giant Super Markets, Inc.*, 618 So. 2d 1140, 1142 (La. App. 4 Cir. 1993), *writ denied*, 629 So. 2d 347 (La. 1993) ("[M]ere knowledge . . . that a machine is dangerous and that its use, therefore, creates a high probability that someone will eventually be injured is not sufficient to meet the 'substantial certainty' requirement." (citations omitted)).

---

[49]    *Id.* ¶¶ 209, 221, 232 & 242.

[50]    *Id.* ¶¶ 210, 222, 233 & 243.

[51]    *Id.* ¶ 66.

Other courts have similarly rejected battery claims arising from alleged exposure to hazardous conditions. *See Butler v. Denka Performance Elastomer LLC*, No. 18-6685, 2019 WL 1160814, at \*9 (E.D. La. Mar. 13, 2019) (dismissing an emissions-based battery claim because "plaintiffs do not allege facts that indicate that [defendant] knew that harm was substantially certain or . . . consciously desired to harm them by continuing to manufacture chloroprene and allowing [excessive] emissions"); *In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179, 2011 WL 4575696, at \*11 (E.D. La. Sept. 30, 2011) (dismissing a battery claim arising out of the spraying of harmful chemicals in plaintiffs' vicinity because the complaint did not "state or suggest that the [defendant] 'desired' that his spraying would cause an offensive or harmful touch to the [plaintiffs]"); *Evans*, 2011 WL 1898912, at \*6 (rejecting a battery claim for hazardous noise levels allegedly causing hearing loss as "conclusory" and otherwise insufficient to state a claim for an intentional tort).  The Court finds that plaintiffs' claims of civil battery against the four employee defendants must be dismissed.

In sum, plaintiffs' allegations of negligence and civil battery against the nondiverse employee defendants are deficient under *Smallwood*.  The Court finds that there is "no reasonable basis . . . to predict that the plaintiff[s]

might be able to recover against [the] in-state defendant[s]." *Davidson*, 819 F.3d at 765 (quoting *Smallwood*, 385 F.3d at 573).  Accordingly, joinder of the employee defendants was improper.  The Court hereby dismisses those defendants.  Because only diverse defendants remain,[52] this Court has diversity jurisdiction under 28 U.S.C. § 1332(a).  Plaintiffs' motion to remand is therefore denied.

Having found that it has diversity jurisdiction, the Court need not address whether it has federal-officer jurisdiction under 28 U.S.C. § 1442. *See Wonsley v. Kroger Co. Madison, MS*, No. 19-675, 2020 WL 8922845, at *2 (S.D. Miss. May 20, 2020) ("Because the Court concludes that it ha[s] diversity jurisdiction over this case . . . , it need not resolve whether federal question jurisdiction exist[s]."); *Coerver v. Allstate Ins. Co.*, No. 07-2972, 2007 WL 2029482, at *2 (E.D. La. July 10, 2007) ("[B]ecause [defendant] properly removed this case on the bases of original jurisdiction and federal question jurisdiction, there is no need to consider [its alternative] jurisdictional claims . . . .").

## IV.   CONCLUSION

---

[52]   Evonik is an Alabama corporation, with a principal place of business in New Jersey.  R. Doc. 1 ¶ 14.  Shell is a Delaware corporation, with a principal place of business in Texas.  *Id*. ¶ 15.

For the foregoing reasons, the Court DENIES plaintiffs' motion to remand.  Plaintiffs' claims against defendants Randy Cashio, James Carter, Artis Williams, and Kerry Harrison are DISMISSED.


New Orleans, Louisiana, this __19th__ day of October, 2021.


_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE